IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID JOSEPH WEISMER, <br>     ID # 1031866, <br>         Petitioner, <br> vs. <br> <br> NATHANIEL QUARTERMAN, Director, <br> Texas Department of Criminal <br> Justice, Correctional Institutions Division, <br>         Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 3:06-CV-1782-K (BH) <br> <br> Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge convictions on February 26, 2001, for robbery in Cause Nos. F00-48511-SU and F00-71263-TU and possession of cocaine in Cause No. F00-48416-SU. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In June of 2000, the State indicted petitioner on two charges of robbery and one charge for possession of cocaine. (Trial Transcripts at 2). After petitioner pled not guilty to the charged

offenses, on February 26, 2001, he was tried before a jury.  (S.H.Tr. I[1]:85; S.H.Tr. II:85; S.H.Tr. III:85).

According to the state appellate court account of the evidence presented at the guilt phase of petitioner's trial, petitioner entered a gas station one night while holding what appeared to be a shotgun underneath a shirt wrapped around his arms and hands and told the clerk to give him money or he would be killed.  Petitioner left without obtaining any money.  About an hour later, petitioner approached a man inside of a truck after blocking his exit from the parking area of a condominium, pointed what appeared to be a shotgun with a towel wrapped around it at the man, and demanded that the man exit his truck.  After the man did so, petitioner took the man's wallet, told him to get down his knees, and then drove away in his own truck.  The man was able to give petitioner's license plate number to the police.  After determining petitioner's address from the car registration, the police arrested petitioner at his home.  Petitioner had the man's wallet and credit cards in his jacket and a packet of cocaine in his mouth when arrested.  *Weismer v. State*, Nos. 5-01-00806-CR, 5-01-00807-CR, 5-01-00808-CR, slip op. at 2-3 (Tex. App.–Dallas, April 9, 2002, pet. denied).

The jury found guilty petitioner guilty. (S.H.Tr. I:85; S.H.Tr. II:85; S.H.Tr. III:85).  At the punishment phase of petitioner's trial, petitioner first pled true to the enhancement paragraph contained in each of the three indictments, after being admonished that this plea would raise the punishment range for the possession case to two to twenty years and raise the punishment range on the two robbery cases to five to ninety-nine years or life. (R. 4:31-34).  The State then entered into

---

[1] "S.H.Tr. I" refers to the state habeas transcript in Cause No. F00-48511-SU, "S.H.Tr. II" refers to the state habeas transcript in Cause No. F00-71263-TU, and "S.H.Tr. III" refers to the state habeas transcript in Cause No. F00-48416-SU.

evidence the pen packets in three separate cases showing that on March 5, 1993, petitioner was convicted of aggravated assault, burglary of a habitation, and felony theft and was sentenced to ten years in each case. (R. 4:35-36). The pen packet in the aggravated assault case reflects that petitioner was initially given a four-year deferred adjudication sentence in June of 1990 and was adjudicated guilty because he left a drug treatment center on April 17, 1992, without the permission of either his probation officer or the court. The pen packet in the theft cases indicates that petitioner had originally been given six years probation for a theft that occurred on August 3, 1991, but that probation was revoked as well for the same reason. The pen packet in the burglary case reflects that petitioner pled guilty to the burglary, which occurred on December 27, 1992. (R. 4:State's ex. #32). The State and the defense then rested and closed at punishment. (R. 4:36).

During closing statements, the State argued that although petitioner might indeed be a cocaine addict, not all addicts are robbers, and because petitioner chose to commit assaultive crimes (as opposed to stealing a car) and to place people in fear of their lives, he had to be held accountable for his actions. (R. 4:39-40, 52). The State further argued that petitioner had been given previous chances by being placed on probation before and had also been to the penitentiary, so the jury should not give him a minimal sentence in light of his criminal history of six felonies. (R. 4:40-42). The State also pointed out in closing arguments that after petitioner committed the second robbery, he tried to use one of the credit cards to hire a stripper, and that he had previously walked away from a drug treatment facility. (R. 4:52-54). In his closing statement, defense counsel stated that petitioner is a drug addict and that he committed the two robberies to obtain drugs. Counsel further argued that had petitioner been successful in obtaining money in the first robbery, he would not have committed the second. Counsel pointed out that no weapon was used in either robbery and that

3

petitioner told the victims that he was committing robbery in order to obtain drugs. (R. 4:43-46). Counsel further argued that petitioner committed his prior crimes due to his drug addiction, and that petitioner was under the influence of drugs when he committed the robberies. Finally, counsel argued that petitioner was going to be punished for his actions because the range of punishment on each case was now higher because of his criminal history, but that the jurors should consider that he should also be rehabilitated and therefore should be sentenced to a term from which he could be paroled and placed in a drug treatment center as a condition of parole. Counsel requested a ten to fifteen-year sentence for petitioner. (R. 4:48-52). At the conclusion of the State's final closing argument, defense counsel objected to the prosecutor's last remarks as being a comment on the defendant's failure to testify. The trial court overruled the objection and then retired the jury to deliberate on punishment. (R. 4:59). The jury sentenced petitioner to forty-year and thirty-year sentences on the robbery convictions and to a ten-year sentence on the possession of cocaine conviction. (S.H.Tr. I:85; S.H.Tr. II:85; S.H.Tr. III:85).

On direct appeal, petitioner challenged the trial court's denial of his motions for mistrial and a continuance and the admission of certain evidence. The Fifth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Id.* On March 4, 2004, petitioner filed a state application for writ of habeas corpus in which he raised the same issues he raises in his federal petition. (S.H.Tr. I:7, 11). The Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without an evidentiary hearing. *Ex parte Weismer*, Nos. WR-64,330-01, -02, -03 (Tex. Crim. App. September 20, 2006).

On September 28, 2006, petitioner filed the instant petition for federal habeas relief. Respondent filed an answer on April 9, 2007, (*see* Answer) and provided the state-court records.

4

Petitioner filed a reply on May 9, 2007. (*See* Reply).

C. <u>Substantive Issues</u>

Petitioner asserts that: (1) his trial counsel were ineffective for failing to present mitigating evidence at the punishment phase of the trial and for failing to timely object to the prosecutor's comments during summation about petitioner's failure to testify; and (2) his appellate counsel was ineffective for failing to raise the issue of the prosecutor's comments on appeal. Petitioner also argues that the state habeas court's findings are not entitled to deference by this Court and requests an evidentiary hearing.

D. <u>Exhaustion</u>

Respondent states that petitioner has exhausted his state court remedies.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

5

proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

6

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. DEFERENCE TO STATE COURT FINDINGS

Petitioner first contends that the findings and conclusions made by the state habeas court are not entitled to deference by this court because: 1) the district court appointed a special master to resolve the issues raised and prepare findings of fact and conclusions of law without informing petitioner; 2) the special master requested that trial counsel Dan Hagood and appellate counsel David O'Neil submit affidavits without informing petitioner and allowing him the opportunity to submit proposed questions for Hagood; 3) the special master submitted her proposed findings and conclusions to the district judge without giving petitioner notice or an opportunity to respond; and 4) the district court signed the findings and conclusions without giving him an opportunity to be heard. Petitioner cites no statutory or case law authority to support his assertion.

Pursuant to Texas state law: 1) petitioner was permitted to file his state application; 2) the State was required to answer and did so; 3) the district court was required to determine whether there were controverted, previously unresolved facts material to petitioner's confinement, did so, and ordered affidavits to resolve issues; 4) the district court was allowed to appoint an attorney to make the findings of fact and did so; and 5) after approving the findings made by the special master, the district court was required to submit the application, answer, and affidavits to the Court of Criminal

7

Appeals, and did so. *See* TEX. CRIM. PROC. CODE ANN. art. 11.07, § 3(b), (c), (d) (Vernon 2007).

Here, petitioner filed a state application for writ of habeas corpus, he submitted several exhibits in support of this application, and he requested an evidentiary hearing. In its response, the State requested that the trial court obtain an affidavit from trial counsel and appellate counsel, if necessary, in order to fully develop the underlying facts of petitioner's claims. (S.H.Tr. I:64, 66). The court did so. After the district court signed its findings and conclusions, petitioner submitted objections to them, and these were filed with the Court of Criminal Appeals and are part of the record. (*See* supp. state habeas transcripts). The trial court followed applicable state law in addressing petitioner's state application, and petitioner has not shown that more was required of that court in order for this Court to give its findings and conclusions deference under 28 U.S.C. § 2254. Petitioner's argument is without merit.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because: 1) defense counsel did not present any mitigating evidence at the punishment phase of the trial; and 2) counsel did not timely object to two comments made by the prosecution during closing arguments at the punishment phase of the trial that referred to petitioner's failure to testify at trial.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's performance is constitutionally deficient courts, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further,

"[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

**A. <u>State Court Findings</u>**

At the state habeas level, petitioner's trial attorney, Daniel K. Hagood, submitted an affidavit. In this affidavit, Mr. Hagood states that he represented petitioner at trial, along with co-counsel Knox Fitzpatrick and Gerald Banks. Hagood further states that, prior to trial, petitioner's attorneys interviewed a number of defense witnesses and discussed the positives and negatives of each witness and how they could help or hurt petitioner's case. Hagood states in his affidavit that petitioner made the final decision about which witnesses to call, after the interviews with each witness and after consultation with his attorneys. He also states that the defense, including petitioner, was concerned that the jury might discover through the cross-examination of the defense expert that petitioner had previously been examined by another forensic psychiatrist. The report from that examination was extremely damaging to petitioner's case because the psychiatrist concluded that petitioner is a sociopath. Hagood further states that the State had indicated that it was prepared to call yet another forensic psychiatrist in rebuttal who would also testify that

9

petitioner is a sociopath. (S.H.Tr. I:78-9).

Also at the state level, state habeas counsel attached as exhibits to the application for writ of habeas corpus an unsworn declaration from petitioner and affidavits from petitioner's mother, June Weismer, and from Dr. Mark Unterberg. In his declaration, petitioner states initially that the State initially offered him a plea bargain of fifteen years, which he rejected, because he believed that a five-year sentence was fair since he did not have a weapon and did not hurt anyone. Petitioner further states that he has had mental health issues since childhood and became addicted to drugs as a teenager. He further states that his mother discussed his background with Hagood, and Hagood had several doctors examine him. Petitioner also states in his declaration that Hagood said that he was going to call witnesses at the punishment phase of the trial, that petitioner expected Hagood to call his parents, some friends, his parole officer, and Dr. Mark Unterberg to testify, and that Hagood did not explain why he rested at the punishment stage without calling any witnesses. (S.H.Tr. I:37-8). In her affidavit, June Weismer states that she informed Mr. Hagood of petitioner's history, including that he was adopted by the Weismers as an infant, suffered from fetal alcohol syndrome as well as developmental and behavioral problems, developed a substance abuse addiction as a teenager that persisted into adulthood, and received mental health treatment. Weismer further states that she was available to testify regarding petitioner's history, she gave Hagood the names of several relatives and friends who were willing to testify on petitioner's behalf, she expected Dr. Unterberg to be called as a witness, and she and her husband were waiting in the hallway during trial to be called as witnesses. Finally, Weismer states that Hagood informed her that he chose not to call any witnesses at the punishment phase of the trial because the prosecutor had told him that if he called any witnesses, she would call a jail doctor to testify that petitioner is a sociopath. (S.H.Tr.

10

I:39-40).

Dr. Unterberg states in his affidavit that he is a psychiatrist, that he was hired by Mr. Hagood to examine petitioner, and that he interviewed petitioner two different times. Unterberg further states that he diagnosed petitioner with severe depression and with a dependent and impulsive personality disorder with borderline features. Unterberg also states that he believed that several factors justified leniency in sentencing: petitioner's family would provide an effective support system; petitioner was motivated to receive treatment; and petitioner was educated and had intellectual skills. Unterberg further states in his affidavit that borderline personalty disorder is treatable over time with effort, he found no evidence of severe sociopathy, and in his opinion, petitioner would not be a danger to society in the future with continued psychiatric care and abstinence from drugs. Finally, Unterberg states that he was prepared to testify at trial, that Hagood told him that he was not needed as a witness but did not explain why, and that he was not informed that a jail doctor intended to testify in rebuttal that petitioner is a sociopath. (S.H.Tr. I:42-3).

At the state habeas level, the trial court found that Hagood is a trustworthy individual and that the statements in his affidavit are worthy of belief. (S.H.Tr. I:71). The court then concluded that petitioner had failed to prove by a preponderance of the evidence that trial counsel rendered ineffective assistance of counsel. (S.H.Tr. I:75). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Weismer*, slip op. at 1.

B.  **<u>Failure to Present Mitigation Evidence</u>**

Petitioner contends that his trial attorneys were ineffective for failing to present any mitigating evidence at the punishment phase of his trial. Petitioner asserts that defense counsel

11

should have called Dr. Unterberg and petitioner's parents as witnesses and that no reasonable trial strategy exists for this decision where evidence of petitioner's guilt was overwhelming and punishment was therefore the only real issue at trial. Petitioner further asserts that the State's threat to call the jail doctor as a witness does not justify not calling mitigation witnesses because petitioner had "nothing to lose and everything to gain" by presenting witnesses and because, as petitioner asserts, this jail doctor never personally examined him. Petitioner also disputes the portion of Hagood's affidavit that states it was petitioner's final decision not to call witnesses at punishment, contending that this was counsel's decision. Even were it his decision not to call witnesses, petitioner claims, counsel should not have deferred to this wish because that is a decision for counsel to make, especially when a client has a history of mental health problems.

Even assuming for purposes of this motion that it was counsel's final decision not to call witnesses at punishment, any conscious and informed decision by counsel based on an adequate investigation, trial tactics and strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Trial counsel's affidavit explains his concern that if Dr. Unterberg were called as a witness, the jury would learn that petitioner had previously been examined by another doctor and diagnosed as a sociopath. This statement is supported by the affidavit of June Weismer, in which she states that that is the precise reason Hagood gave her for not calling Unterberg as a witness. Counsel further explains that he was concerned because the lead prosecutor had stated that if the defense called any mitigation witnesses, the State would call a doctor who would in fact testify that petitioner is a sociopath. While petitioner calls into question

12

the weight the jury would have given this testimony and asserts that he "had nothing to lose," the record shows that petitioner had not only been found guilty of three felonies by this jury, but had also been convicted of three prior felonies, had been given probation in two of those cases, and had violated probation by leaving a drug treatment center. Due to his prior record, petitioner was facing a maximum twenty-year sentence in one case and life sentences in the two other cases, and the jury was aware that petitioner had been provided drug treatment in the past and had not completed it. Given petitioner's criminal history and a history of failing to complete court-ordered drug treatment, petitioner has not shown that counsel's decision not to call witnesses to talk about petitioner's history of drug problems or to call a doctor as a witness who diagnosed petitioner as having a borderline personality disorder and a drug addiction that could both be treated was a decision that permeated the trial with obvious unfairness. *See Barrientes v. Johnson*, 221 F.3d 741, 774 (5th Cir. 2000) (stating that a tactical decision not to present character evidence at the punishment phase of a capital murder trial because it would open the door to incidents of prior misconduct on the defendant's part is not deficient performance); *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) (noting that a failure to present evidence at trial does not constitute "deficient performance" under the *Strickland* standard if counsel could have concluded, for tactical reasons, that presenting such evidence would be unwise). Moreover, although petitioner did not receive the ten to fifteen-year sentence that his attorneys requested in closing arguments in the two robbery cases, petitioner did receive sentences in those cases that were below the middle-range of possible punishment despite his criminal history. This is another indication that petitioner's trial was not permeated with obvious unfairness due to counsel's decision. Petitioner has not shown that the state court's decision denying

this claim is an unreasonable application of federal law.[2]

C. **Failure to Object**

Petitioner also asserts that his trial attorneys were ineffective for failing to timely object to two statements made by the prosecutor during her closing statement. Petitioner presents no evidence that counsel's objection was, in fact, untimely. The trial court overruled the objection in the presence of the jury and never stated that the objection was untimely. No subsequent state court has held that the objection failed to preserve error because it was untimely. Without any evidence in the record that this objection failed to preserve error under state law, there is no evidence that counsel provided ineffective assistance in this regard, and the state court's decision denying this claim cannot be considered an unreasonable application of the *Strickland* standard.

For the foregoing reasons, petitioner's claims of ineffective assistance of trial counsel entitle him to no habeas relief.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner also contends that his appellate counsel was ineffective for failing to allege as a ground of error on appeal the State's commission of reversible error through the prosecutor's two comments on petitioner's failure to testify during closing statements at the punishment phase of the trial. Petitioner asserts that had counsel done so, there is a reasonable probability that the appellate court would have reversed the petitioner's punishment.

---

[2] Within the body of his argument on this claim, petitioner also asserts that trial counsel were ineffective for failing to have him plead guilty and have the jury decide punishment only. (Petition at 12-13). This claim was not properly raised at the state level, nor was it listed as a basis for relief in the federal petition. Nevertheless, petitioner has not shown how he was prejudiced by the alleged failure. The jury ultimately decided his punishment, and a guilty plea would not have prevented the prosecution from presenting any of the evidence it ultimately presented to the jury during the punishment phase. This claim likewise entitles petitioner to no relief.

The federal constitution guarantees a criminal defendant effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether counsel has been ineffective is determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). In the context of appeals, the Constitution does not require an appellate attorney to advance every conceivable argument, and it can be effective assistance of counsel on appeal to focus on a few key issues. *Evitts v. Lucey*, 469 U.S. at 394; *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 920 F.2d 251 (5th Cir. 1990). Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

In this case, the prosecutor made the following two comments during her summation:

> Did you hear from a single person a good thing about this man? Did you hear anybody form this witness stand come up here and say, "He won't do it again. I'll make sure of that. I'll go to rehab"? No. You didn't hear a single good thing from anyone about this man.
>
> \* \* \*
>
> I'm going to ask when you go back there to consider what punishment is appropriate for this man that you start at the top and for everything that you think is good about this man, everything that you think shows he has some redeemable qualities knock off a couple of years.
> I submit to you you've heard nothing that shows that he's sorry for what he did or that he won't do it again.

(R. 4:58-59).

At the state habeas level, appellate counsel David O'Neil submitted an affidavit in which he stated that he did not raise this issue as a point of error because he believed that trial counsel's objection was untimely, and the issue was therefore not preserved for appellate review. (S.H.Tr.

15

I:59). The state habeas court found that the prosecutor's second statement was a response to the following argument for leniency made by defense counsel:

> But let's give this man some hope, give his family some hope so that when he's punished, after he's punished on what I will ask is a 10- to 15-year sentence he can come out and be rehabilitated in a treatment center.

(R. 4:51-52). The state habeas court then concluded that petitioner had failed to meet his burden under *Strickland* and recommended that relief be denied. The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Weismer*, slip op. at 1.

In *Griffin v. California*, 85 U.S. 609, 615 (1965), the Supreme Court held that the Fifth Amendment, applicable to the states through the Fourteenth Amendment, forbids either any comment by the prosecution on an accused's silence or any instruction from the court that the silence is evidence of guilt. Shortly thereafter, in *Chapman v. California*, 386 U.S. 18, 22 (1967), the Supreme Court concluded that *Griffin* error is not *per se* error and is a constitutional error that is subject to a harmless error analysis. Then, in *Anderson v. Nelson*, 390 U.S. 523, 523-24 (1968), the Supreme Court further held that a prosecutor's comment on a defendant's failure to testify cannot be considered harmless error under *Chapman* where the comment is extensive, where an inference of guilt from the silence is stressed to the jury as a basis for convicting the defendant, and where there is evidence that could have supported an acquittal.

Petitioner contends that appellate counsel should have argued on appeal that his Fifth Amendment rights were violated by the two comments made by the prosecutor during her summation. While O'Neil has stated that he did not raise this as a point of error on appeal because

16

he did not believe that error had been preserved, petitioner has failed to show a reasonable probability that he would have prevailed on appeal had this issue been raised. Under Texas law there are four areas of permissible jury argument: 1) summations of the evidence; 2) reasonable inferences or deductions from the evidence; 3) responses to opposing counsel's argument; and 4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996). The state habeas court found that the second comment made by the prosecutor was a response to opposing counsel's argument for leniency so that petitioner could seek drug treatment. In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Moreover, the record reflects that both comments by the prosecutor were in response to this argument by defense counsel. The prosecutor's comments did not refer to the fact that petitioner did not testify, but rather, to the fact that the defense had not presented *any* witnesses or other evidence that petitioner would not commit another crime, would attend drug rehabilitation, or was remorseful. The only statement that the prosecutor made that might be considered a comment on petitioner's decision not to testify was the statement "I'll go to rehab." Petitioner has not shown a reasonable probability, however, that had this issue been raised on direct appeal, his sentences would have been reversed because, under the *Chapman* harmless error standard applicable on direct appeal, any error was harmless beyond a reasonable doubt given the fleeting nature of the comment and the fact that it had no bearing on petitioner's guilt. *Chapman*, 386 U.S. at 24-25. Because petitioner has not shown a reasonable probability that he would have prevailed on appeal based on this argument, petitioner has failed to meet his burden under *Strickland*, and petitioner is entitled to no relief on the basis of this claim.

17

## VII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims in his state writ. The Court of Criminal Appeals denied the state writ on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. This decision at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VIII. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 7th day of November, 2008.

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE